EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Partido Nuevo Progresista<br><br>    Peticionario<br><br>        v.<br><br>Hon. Sila María Calderón, Gobernadora; Estado Libre Asociado de Puerto Rico<br><br>    Recurridos | Certiorari<br><br>2007 TSPR 27<br><br>170 DPR \_\_\_\_ |

Número del Caso: CC-2004-131

Fecha: 16 de febrero de 2007

Tribunal de Apelaciones:

            Región Judicial de San Juan-Panel I


Juez Ponente:

            Hon. Carlos Rivera Martínez


Abogados de la Parte Peticionaria:

            Lcdo. Rafael Sánchez Hernández
            Lcdo. Manuel J. Camacho Cordova


Abogado de la Parte Recurrida:

            Lcdo. Pedro Santiago Rivera

Oficina del Procurador General:

            Lcda. Sarah Y. Rosado Morales
            Procuradora General Auxiliar


Materia: Sentencia Declaratoria, Injunction.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Partido Nuevo Progresista

    Peticionario

        v.                              CC-2004-131        Certiorari

Hon. Sila María Calderón,
Gobernadora; Estado Libre
Asociado de Puerto Rico, etc.

    Recurridos

SENTENCIA

San Juan, Puerto Rico a 16 de febrero de 2007.

A la luz de los principios de justiciabilidad, procede desestimar el presente caso por académico.

## I.

El Partido Nuevo Progresista (en adelante, P.N.P.) presentó una demanda y una petición de *injunction* ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el Estado Libre Asociado de Puerto Rico y su entonces Gobernadora, Hon. Sila María Calderón (en adelante, la Gobernadora).

El P.N.P. alegó en la demanda que la Gobernadora utilizó fondos públicos para transmitir varios anuncios en la prensa, radio y televisión con el propósito de realzar su imagen, obtener una ventaja indebida frente a sus rivales políticos, influenciar la opinión pública a favor del Partido Popular Democrático, adelantar los intereses de dicho partido y desmerecer la obra realizada por la pasada administración del P.N.P. Además, se adujo que la publicación de los referidos anuncios contravenía el Artículo VI, sección 9, de la Constitución del Estado Libre Asociado de Puerto Rico, que prohíbe el uso de fondos públicos para fines no públicos y consagra la paridad económica entre los partidos políticos. Así, el P.N.P. solicitó que se declarara inconstitucional el gasto de fondos públicos, que se dictara un injunction ordenando a la parte demandada a abstenerse de su conducta y que se ordenara al Departamento de Justicia que recobrara el dinero gastado en los mencionados anuncios.

Celebradas varias vistas ante el foro primario, las partes estipularon los hechos en controversia. Por otra parte, la Gobernadora solicitó que se desestimara sumariamente el pleito, porque la demanda, aun cuando se dieran por ciertas las alegaciones en ella contenidas, no contenía una causa de acción contra ella, en su capacidad personal u oficial.

Examinado el derecho aplicable, el foro de instancia desestimó la demanda contra la Gobernadora. Inconforme, el P.N.P. apeló ante el Tribunal de Apelaciones, que confirmó la determinación de instancia.

Insatisfecho, el P.N.P. acudió ante nos mediante recurso de certiorari. Por su parte, la Gobernadora se opuso a la expedición del mismo, alegando que el caso no es justiciable. En específico, la Hon. Sila María Calderón señaló que, como no se postuló para las elecciones de 2004, la controversia se había tornado académica.

Por encontrarse igualmente dividido en relación a la cuestión de la academicidad, inicialmente este Tribunal emitió una sentencia confirmando el dictamen del foro apelativo. Inconforme, el P.N.P. presentó una moción de reconsideración, la cual acogimos y, así, expedimos el auto solicitado. Por entender que el caso ya no presenta un asunto justiciable, se anula el auto expedido y se deniega la segunda moción de reconsideración.

II.

La función revisora de los tribunales se limita a resolver las controversias genuinas entre partes opuestas con un interés real en obtener un remedio judicial que haya de afectar sus relaciones jurídicas. Esto es, los tribunales no podemos emitir opiniones consultivas. No obstante, excepcionalmente podemos revisar un asunto aunque sea académico cuando se trata de una controversia

recurrente y capaz de evadir la revisión judicial. Para ello, es necesario que exista una "probabilidad razonable" de que el pleito pueda repetirse y que la controversia sea inherentemente de tan corta duración que es probable que la misma deje de existir antes de que termine la litigación. *Asociación de Periodistas v. González Vázquez*, 127 D.P.R. 704 (1991).

### III.

A la luz del derecho aplicable, el caso ante nuestra consideración no es justiciable. En efecto, el pleito se volvió académico cuando los referidos anuncios cesaron de transmitirse. Además, como la Hon. Sila María Calderón no se postuló para reelección ni tiene una posición eleccionaria en una de las ramas del Gobierno, no hay una probabilidad razonable de que la controversia se repita.

### IV.

Por los fundamentos que preceden, se anula el auto expedido y se deniega la segunda moción de reconsideración. Las partes deberán atenerse a lo resuelto por este Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton emitió Opinión de Conformidad a la cual se unieron las Juezas Asociadas señoras Fiol Matta y Rodríguez Rodríguez. El Juez Asociado señor Rebollo López emitió Opinión Disidente. El Juez Asociado señor Rivera Pérez se reitera en su Opinión Disidente, referente a

este asunto, en el caso <u>P.N.P. v. Gobernadora</u> de 21 de junio de 2004, 2004 T.S.P.R. 105, 2004 J.T.S. 100, 162 D.P.R. __ (2004). El Juez Asociado Fuster Berlingeri no intervino. Todos los Jueces que intervinieron lo hacen por Regla de Necesidad.


                                        Aida I. Oquendo Graulau
                                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Partido Nuevo Progresista

    Peticionario

        v.                         CC-2004-131        Certiorari

Hon. Sila María Calderón,
Gobernadora; Estado Libre
Asociado de Puerto Rico, etc.

    Recurridos

Opinión de Conformidad emitida por el Juez Presidente señor Hernández Denton a la cual se unen las Juezas Asociadas señoras Fiol Matta y Rodríguez Rodríguez

San Juan, Puerto Rico a 16 de febrero de 2007.

En _P.N.P. en Humacao v. Carrasquillo_, res. el 27 de octubre de 2005, 2005 T.S.P.R. 157, resolvimos que una demanda solicitando que un funcionario cesara de publicar ciertos anuncios se había tornado académica debido a la remoción de dichos anuncios y a lo especulativo de que la controversia pudiera repetirse.

Por entender que los hechos ante nos son prácticamente idénticos a los de _P.N.P. en Humacao v. Carrasquillo_, _Id.,_ somos del criterio que procede anular el auto expedido y denegar la segunda moción de reconsideración presentada por el Partido Nuevo Progresista (en adelante PNP). Por ende, endosamos la Sentencia emitida por el Tribunal.

I.

En diciembre de 2003, el PNP presentó ante el Tribunal de Primera Instancia una demanda y una petición de *injunction* contra el Estado Libre Asociado, y su entonces gobernadora, Hon. Sila María Calderón (en adelante, Gobernadora).

En su demanda, el PNP alegó, en síntesis, que la Gobernadora utilizó fondos públicos para transmitir varios anuncios en la prensa, radio y televisión con el propósito de obtener una ventaja indebida frente a sus rivales políticos y de influenciar la opinión pública a favor del Partido Popular Democrático.[1] Adujo que la publicación de los referidos anuncios con dicho fin contraviene el Artículo 6, sección 9 de la Constitución del Estado Libre Asociado de Puerto Rico y el axioma de igualdad en materia electoral que permea nuestro ordenamiento jurídico.

Así las cosas, y luego de la celebración de varias vistas ante el foro primario, las partes estipularon dos hechos, a saber: (1) que la Gobernadora era candidata a la reelección, y (2) que la Gobernadora continuaba transmitiendo los anuncios impugnados. La referida estipulación tenía el obvio propósito de acreditar ante

---

[1] Impugnaron varios anuncios en los que se utilizaba el lema "Puerto Rico, hacia el Futuro por Buen Camino". También impugnaron ciertos anuncios en los que se utilizaban los colores rojo y amarillo, supuestos colores con los que se identifica la campaña de la Gobernadora. Adujeron que dichos anuncios tenían el fin de opacar los logros de la pasada administración gubernamental.

el Tribunal de Primera Instancia que la controversia no se había tornado académica pues la alegada conducta ilegal no había cesado[2] y, aunque cesara, la misma era susceptible de repetirse entre las mismas partes.[3]

Luego de aquilatar la prueba, el foro de instancia desestimó la demanda. Inconforme, el PNP acudió ante el Tribunal de Apelaciones. Dicho tribunal confirmó la determinación del foro primario. Aún insatisfecho, el PNP acudió ante nos solicitando la revocación de la determinación del Tribunal de Apelaciones.

La Gobernadora, por su parte, se opuso a que expidiéramos el auto solicitado señalando que la controversia se había tornado académica debido que no se postuló para ostentar nuevamente su cargo en las elecciones de 2004.

En junio de 2004, este Tribunal, por encontrarse igualmente dividido respecto a si el presente caso se había tornado académico, emitió sentencia confirmatoria de la dictada por el foro apelativo. Inconforme, el PNP solicitó que reconsideremos nuestro dictamen. En octubre de 2004, acogimos la referida moción de reconsideración y expedimos el auto solicitado.

Entendemos que la presente controversia se ha convertido en académica debido a que la Gobernadora no se

---

[2] Debido a que la Gobernadora continuaba transmitiendo los anuncios.

[3] Es decir, entre la Gobernadora, de ser reelecta, y el PNP.

postuló para la reelección y, en efecto, ya no funge como tal. Además, somos del criterio de que, al igual que como ocurrió en P.N.P de Humacao, *supra*, el caso que tenemos ante nos ya no presenta un asunto justiciable toda vez que los anuncios impugnados han cesado de transmitirse. *Veamos*.

## II.

Como hemos mencionado anteriormente, la academicidad no es otra cosa que la doctrina de la acción legitimada enmarcada en el tiempo: el interés personal requerido debe existir al comienzo del litigio (*standing*) y debe continuar durante toda la duración del mismo (*academicidad*). P.N.P. de Humacao, *supra* (citas omitidas). En atención a ello, una variación en el trasfondo fáctico del caso o en el derecho aplicable puede tener el efecto de convertir en académica una controversia que, en sus orígenes, era justiciable. Comisión de la mujer v. Secretario de Justicia, 109 D.P.R. 715 (1980).

A pesar de que, como norma general, los tribunales debemos abstenernos de entrar a los méritos de una controversia académica, la jurisprudencia ha desarrollado varias excepciones a la referida regla. A tenor con lo anterior, hemos establecido que un asunto técnicamente académico es revisable por los tribunales cuando presenta una controversia recurrente y capaz de evadir la revisión judicial.

Conforme a la referida excepción, se puede entrar en los méritos de una controversia académica dependiendo del saldo que arroje el examen de los siguientes tres criterios: (1) probabilidad de la recurrencia, (2) identidad o no de las partes involucradas en el posible pleito recurrente futuro, y (3) probabilidad de que la controversia evada revisión judicial. P.N.P. de Humacao, *supra*. Cruz Negrón v. Administración de Corrección, res. 28 de marzo de 2005, 2005 TSPR 34.

En cuanto a la probabilidad de recurrencia, es necesario que exista una "probabilidad razonable" de que el pleito pueda repetirse. No basta, por tanto, una posibilidad meramente especulativa de que la controversia pudiera volver a ocurrir.

De otra parte, usualmente debe existir una posibilidad real de que el caso pueda volver a ocurrir entre las mismas partes. No obstante lo anterior, hemos resuelto que, en casos que presentan cuestiones constitucionales de la más alta jerarquía, podemos entrar a los méritos de la controversia aunque la probabilidad de repetición sea entre distintas partes. Ello con el fin de imprimirle significado concreto a nuestros valores más fundamentales. P.N.P. de Humacao, *supra.*

En el pasado hemos identificado varios valores constitucionales que justifican que entremos a los méritos de un caso a pesar de que el mismo solo es susceptible de repetirse entre partes distintas. Entre

dichos valores se encuentran la libertad de expresión[4], la libertad de prensa[5], y la igual protección de las leyes.[6]

Por otro lado, recientemente expresamos que el axioma de igualdad electoral, "aunque ciertamente representa un principio importante dentro de nuestro ordenamiento jurídico, no constituye un 'valor constitucional de la más alta jerarquía'" equiparable en rango a los derechos fundamentales antes mencionados a los fines de la aplicación de la doctrina de academicidad. P.N.P. de Humacao, *supra.*

Por último, para que concurra la excepción de "cuestión recurrente" es necesario que la controversia sea inherentemente de tan corta duración que exista una probabilidad real de que la misma cese antes de que termine la litigación.

III.

A la luz del derecho aplicable, el caso ante nos no es justiciable.

---

[4] Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos, 150 D.P.R. 924 (2000).

[5] Asociación de Periodistas v. González, 127 D.P.R. 704 (1991).

[6] Com. para los Asuntos de la Mujer v. Secretario de Justicia, *supra.* Similarmente, el Tribunal Supremo Federal en Roe v. Wade, 410 U.S. 113 (1973), entró a los méritos de una controversia técnicamente académica para hacer ciertas expresiones en cuanto al derecho a la intimidad.

El PNP impugnó ante el foro de instancia la legalidad de que la Gobernadora transmitiera determinados anuncios. Sin embargo, los referidos anuncios cesaron de transmitirse antes de que tuviéramos la oportunidad de adjudicar la controversia en sus méritos. Ello se debe a que la Gobernadora optó por no postularse para la reelección y que actualmente el Hon. Anibal Acevedo Vilá ocupa dicho puesto. Nos parece claro que dichos cambios fácticos han provocado que "no exista una controversia actual entre partes adversas". Comisión de la mujer, supra.

Por otro lado, los referidos cambios también nos convencen de que no existe una probabilidad razonable de que se vuelvan transmitir los anuncios impugnados. Además, ello también nos lleva a concluir que es totalmente especulativa la posibilidad de que la controversia se repita entre las mismas partes. Con casi absoluta certeza, en caso de publicarse anuncios similares a los impugnados, la Hon. Sila María Calderón no estará fungiendo nuevamente como Gobernadora.

Por último, la presente controversia no presenta cuestiones constitucionales de la más alta jerarquía que ameriten que, a pesar de que no existe una probabilidad razonable de que recurra la controversia entre las mismas partes, entremos a los méritos del pleito. Como ya hemos señalado, el PNP aduce que la actuación de la Gobernadora viola el axioma de igualdad electoral. El referido

principio, aunque importante, no es equiparable en jerarquía a otros derechos fundamentales como la libre expresión, la libertad de prensa, la igual protección de las leyes y el derecho a la intimidad. En vista de ello, "declinamos entrar a los méritos de la controversia para dilucidar el alcance de dicho axioma en situaciones como la de autos. La revisión judicial de acciones como las [del presente caso] debe esperar, pues, a un momento más oportuno." P.N.P. de Humacao, *supra*.

En atención a las razones antes expuestas, somos del criterio que el caso se tornó académico y procede denegar la segunda moción de reconsideración presentada por el peticionario.

Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Partido Nuevo Progresista

    Peticionario

       vs.                              CC-2004-131
    CERTIORARI

Hon. Sila M. Calderón,
Gobernadora; Estado Libre
Asociado de Puerto Rico

    Recurridos

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico a 16 de febrero de 2007

En el día de hoy una mayoría de este Tribunal rehúsa atender la presente controversia aduciendo que no es justiciable por ser académica. Sostiene la Mayoría que la controversia no es susceptible a repetirse entre las mismas partes y que el interés involucrado no constituye un valor constitucional de la más alta jerarquía. Nada más lejos de la verdad.

En momentos donde la erogación de fondos públicos para fines ilegítimos se ha convertido en uno de los principales males que aqueja a Puerto Rico, la mayoría de este Tribunal se niega a asumir jurisdicción en el caso haciendo caso omiso de la verdadera controversia ante nuestra

consideración, a saber, si los anuncios impugnados violaron el mandato constitucional consagrado en el Artículo VI, Sección 9 de nuestra Constitución sobre el manejo de fondos públicos; el cual, según hemos enunciado en el pasado, se encuentra saturado de intereses de orden público. E.L.A. v. Cole Vázquez, res. el 13 de abril de 2005, 2005 T.S.P.R. 46. Elude así la Mayoría el deber constitucional de este Tribunal de velar por el manejo prudente y escrupuloso de fondos públicos, el cual sin duda alguna constituye un valor constitucional de la más alta jerarquía.

Ciertamente, el dictamen hoy emitido despierta serias inquietudes sobre los criterios realmente tomados en consideración por la Mayoría de este Tribunal al así actuar. Hace escasamente tres meses --interpretando, precisamente, los criterios de justiciabilidad-- asumimos jurisdicción en Romero Barceló v. E.L.A., res. el 10 de noviembre de 2006, 2006 T.S.P.R. 163, principalmente, por razones de alto interés público. Igual trato merece el presente caso, pues, definitivamente, el interés de proteger el buen manejo de los fondos públicos así lo amerita; más aun cuando nuestros pronunciamientos al respecto trascenderían el gobernador y/o las partes en controversia y servirían de guía a todos los funcionarios de turno, quienes a diario se enfrentan a la incertidumbre de si cierta erogación de fondos públicos infringe o no el mandato constitucional en cuestión.

Evidentemente, este Tribunal posee jurisdicción para entender en el caso de epígrafe y pronunciarse sobre la

controversia involucrada. Por ello, no podemos suscribir la Sentencia dictada y emitimos la presente Opinión disidente.

I

El 20 de marzo de 2003, el Partido Nuevo Progresista, en adelante, P.N.P., presentó demanda y solicitud de injunction ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el Estado Libre Asociado de Puerto Rico y su entonces Gobernadora, Hon. Sila María Calderón. En la referida demanda se alegó, en síntesis, que la parte demandada, utilizando para ello fondos públicos, transmitió múltiples anuncios en la prensa, radio y televisión en los cuales pretendía: realzar su imagen y otorgarse una ventaja indebida, influenciando la opinión pública a favor del Partido Popular Democrático, en adelante, P.P.D.; adelantar los interese de dicho partido; y desmerecer la obra realizada por la pasada administración del P.N.P. Se sostuvo, además, que dichos anuncios carecían de un fin público y que violaban la Sección 9 del Artículo VI de la Constitución del Estado Libre Asociado, 1 L.P.R.A. Tomo I, que consagra la paridad o igualdad económica entre los partidos políticos y prohíbe el uso de fondos públicos para la promoción de una postura política.

En específico, el P.N.P. alegó, que la Hon. Sila M. Calderón transmitió por televisión, el 19 de marzo de 2002, un mensaje cuyo alegado propósito era defenderse de imputaciones relacionadas con un posible esquema utilizado

en la campaña del P.P.D. en el año 2000 para violar la Ley Electoral de Puerto Rico.

El P.N.P. también impugnó una serie de anuncios publicados en la prensa durante el año 2003. Alegó que los referidos anuncios, los cuales fueron publicados en distintos periódicos de circulación en Puerto Rico, contenían los colores amarillo y rojo. Según el P.N.P., estos colores alegadamente identificaban la campaña electoral de la Hon. Sila M. Calderón para la gobernación en el año 2000. Sostuvo, además, el P.N.P. que en estos anuncios de prensa se utilizó también el lema "Puerto Rico, hacia el Futuro por Buen Camino" con el fin de opacar los logros de la pasada administración gubernamental, e influenciar la opinión pública a favor de su partido.

La parte demandante impugnó y objetó, además, la publicación de un folleto en el periódico "El Nuevo Día" titulado "Informe al Pueblo de Puerto Rico: A dos Años de Administración 2001-2002" ya que éste, alegadamente, describía despectivamente la pasada administración y exaltaba la suya.

Conforme lo anterior, el P.N.P. solicitó del foro primario que: emitiese una sentencia declarando inconstitucional el gasto de fondos públicos sin fin ni utilidad pública; un injunction que ordenase a la parte demandada a abstenerse de continuar utilizando fondos públicos en el diseño, producción y publicación de tales anuncios; y que dictase una orden al Departamento de

Justicia para que procediese con el recobro y restitución al erario de todo el dinero gastado en el diseño, producción y publicación de tales anuncios por parte de los funcionarios del ELA que incurrieron en tal acción.

Luego de celebradas varias vistas, las partes presentaron, en corte abierta, una moción sometiendo un acuerdo sobre estipulación de hechos. La mencionada moción consta, además, de 51 piezas de evidencia.

Los hechos estipulados fueron dos, a saber:

1. Sila M. Calderón es candidata a reelección al puesto de Gobernadora del Estado Libre Asociado de Puerto Rico.

2. La parte demandada ha estado transmitiendo en la radio, prensa, y televisión de Puerto Rico determinados anuncios, parte de los cuales se acompañan en estas estipulaciones.

Entre las piezas de evidencia estipuladas se encuentran 19 anuncios distintos que fueron publicados en los periódicos "El Todo", "El Vocero", "El Nuevo Día", "Primera Hora" y "The San Juan Star"[7]. Algunos de los referidos

---

[7] Según las determinaciones de hechos del tribunal de instancia, los 19 anuncios en que se utilizaron los colores rojo y amarillo y el lema "Puerto Rico hacia el Futuro por Buen Camino" son los siguientes: (1) anuncio del Departamento del Trabajo y Recursos Humanos informando adiestramientos para personas desempleadas; (2)anuncio del Departamento de Agricultura proveyendo información sobre los beneficios para el agricultor por recolectar el café maduro; (3)anuncio del Departamento del Trabajo y del Consejo de Desarrollo Ocupacional y Recursos Humanos proveyendo información al trabajador desplazado sobre los servicios ofrecidos por la agencia; (4) invitación a subasta de la Oficina Estatal de la Conservación Histórica; (5) invitación a un seminario de Promo-Export y Hong Kong Trade (6) anuncios para participar en subastas del Departamento de Transportación y Obras Públicas; (7) anuncio publicado por el Departamento de la Familia sobre como proteger a los

anuncios fueron publicados en más de una ocasión. Estos anuncios informaban al pueblo los servicios, programas, horarios extendidos de distintas agencias administrativas, avisos de subasta, etc. Otros de los referidos anuncios contienen, en la parte inferior, un pequeño recuadro con el fondo color amarillo y el lema "Puerto Rico, hacia el Futuro por Buen Camino", parte color negro y parte color rojo.[8] La palabra "Buen" está subrayada en color azul. Seguido del lema aparece el nombre de la Gobernadora: Sila M. Calderón, también en letras rojas, y debajo "Gobernadora Estado Libre

niños y sobre los servicios ofrecidos; (8) comunicado de prensa de la Administración de Desarrollo Socioeconómico del Departamento de la Familia informando que no recibiría nuevas propuestas de agencias gubernamentales o entidades privadas; (9)anuncios de varias agencias sobre el horario extendido de sus servicios; (10) anuncio sobre el tema a ser discutido por la Gobernadora el 15 de marzo de 2003 en distintas radioemisoras del país (éste no contiene el lema); (11) anuncio de la Junta de Planificación invitando a la ciudadanía a participar en cinco foros; (12) anuncio de la Administración del Derecho al Trabajo y el Departamento de Educación invitando a los jóvenes que participaron en el programa de Navidad a la entrega de cheques y otras actividades; (13) anuncio de la Oficina de Asuntos de la Juventud informando sobre oportunidades de viaje estudiantiles; (14) anuncio del Departamento de Agricultura invitando a los interesados a una charla con el Secretario de dicho departamento; (15) anuncio de la Oficina de Asuntos de la Juventud informando a los jóvenes sobre oportunidades de empleo; (16) anuncio del Departamento de Salud y Junta Examinadora de Quiroprácticos informando a los interesados dónde obtener solicitudes para el examen de reválida; (17) invitación a celebración de subasta del Departamento de Salud; (18) anuncio del Departamento de Salud sobre notificando a las compañías productoras de alimentos que el Programa WIC está aceptando solicitudes con cotizaciones para autorizar alimentos a servirse a sus participantes; (19) anuncio de los Códigos de Orden Públicos promoviendo a la ciudadanía a solicitar a sus alcaldes la adopción de éstos.

[8] Otros anuncios, en específico, los anuncios de la AAFET, contienen variaciones de los colores rojo y amarillo.

Asociado", en color negro. Debe señalarse que el lema impugnado aparece en casi todos los anuncios publicados, con la excepción de uno.

La parte demandada, Hon. Sila María Calderón, solicitó la desestimación sumaria del pleito. Basó su solicitud en que, aun tomando como ciertas todas las alegaciones de la demanda, la misma no sustentaba una causa de acción contra ella, ni en su capacidad personal ni oficial. Señaló, en apoyo de lo anterior, que los remedios solicitados por la parte demandante iban dirigidos, únicamente, al Estado Libre Asociado de Puerto Rico.

En cuanto a los anuncios estipulados, alegó que todos cumplían con un fin público por lo cual el uso de fondos públicos para sufragarlos era legítimo. Indicó, además, que, según lo resuelto en P.P.D. v. Gobernador I, 139 D.P.R. 643 (1995), el beneficio incidental para el incumbente de un mensaje gubernamental no era suficiente para anular su legitimidad ni desvirtuaba el fin público a que iba dirigido. Sostuvo, por último, que todos los anuncios respondían a la obligación del gobierno de informar a la ciudadanía sobre las funciones que realizaban las distintas agencias del gobierno.

Posteriormente, la parte demandante, presentó una petición de injunction preliminar y permanente. La petición, a esos efectos, presentada por el P.N.P. solicitaba del foro primario que dictara una orden que: (1)prohibiera la utilización de fondos públicos en el diseño, producción, y

publicación del folleto "Informe al Pueblo de Puerto Rico: A dos Años de Administración 2001-2002"; (2)proscribiera el uso de todo anuncio que incluyera el lema "Puerto Rico hacia el Futuro por Buen camino, Sila M. Calderón, Gobernadora"; y (3) prohibiera el uso de los colores rojo y amarillo en los anuncios gubernamentales donde apareciera el nombre de la Gobernadora.

A petición de la Gobernadora demandada, el tribunal de instancia consolidó las peticiones de injunction preliminar y permanente. Evaluada la prueba, el foro primario resolvió que, aun cuando la combinación de colores rojo y amarillo pudiese ser identificada con la campaña política del P.P.D. en el año 2000, el uso de dichos colores en los anuncios gubernamentales en controversia <u>no</u> era una expresión político partidista, por no haber sido utilizados de forma predominante.

En cuanto al lema "Puerto Rico hacia el Futuro por Buen Camino", el tribunal de instancia determinó que tampoco era uno político partidista <u>ya que la parte demandante había aceptado, en corte abierta, no tener evidencia para probar que había sido utilizado en alguna campaña ni surgía de la evidencia estipulada que el lema hubiese sido utilizado en la campaña política del P.P.D. en el 2000</u>. En relación al uso de este lema determinó, además, que cualquier beneficio incidental que surgiese por su uso no desvirtuaba su fin público.

En relación al anuncio televisado de la Gobernadora, en el cual se alegaba el uso de fondos públicos para defenderse de ciertas acusaciones, el foro de instancia determinó que tuvo un fin público ya que promovió el interés del Gobierno en consonancia con sus deberes y funciones de velar por el cumplimiento de las leyes. Dicho foro señaló que el mensaje no pretendió realzar a un candidato o partido político; lo anterior porque, según expresó el referido foro, aun cuando la Gobernadora se defendiera de acusaciones en su contra que minaban su credibilidad y honestidad, se trataba de una "respuesta oficial a éstas al anunciarse unas medidas gubernamentales para atender la situación". Dichas medidas constituían una solicitud al Departamento de Justicia, al Contralor de Puerto Rico, al Blue Ribbon Committee y a la Comisión Estatal de Elecciones para que constataran que no hubo uso de fondos públicos en su campaña para la gobernación.

En cuanto al folleto "Informe al Pueblo" publicado en el periódico "El Nuevo Día", sin embargo, el foro primario determinó que éste <u>sí</u> constituía un subterfugio para conferir una ventaja a la Gobernadora, sufragado con fondos públicos. Ello debido a que el referido folleto contenía expresiones que describían a la administración anterior de forma despectiva, y exaltaba la presente.[9]

_____

[9] La parte demandada levantó la defensa de academicidad en cuanto a la solicitud para que se declarase inconstitucional el uso de fondos públicos para pagar el folleto "Informe al Pueblo…" y el mensaje televisado de la Gobernadora del 10 de

Por último, el foro de instancia determinó, que el P.N.P. no tenía legitimación para solicitar que se emitiera una orden contra el Departamento de Justicia para que procediese con el recobro y restitución al erario del dinero gastado en los anuncios, según P.P.D. v. Gobernador I, ante. Resolvió que, según lo resuelto en el caso antes citado, los partidos políticos no tenían legitimación activa para solicitar, como remedio, la restitución de fondos al erario porque dicha acción no tenía relación con la desigualdad económica entre los partidos políticos.

Determinó, además, dicho foro que, aun considerando la petición de injunction como una de *mandamus*, este último recurso extraordinario tampoco procedía ya que no existía un mandato estatutario claro que le impusiera al Secretario de Justicia la obligación de instar una acción para que se restituyeran los fondos al erario.

En vista a todo lo anteriormente expresado, el foro primario dictó sentencia en la que desestimó la demanda contra la Hon. Sila M. Calderón, tanto en su carácter personal como en su carácter oficial. De igual forma, denegó los injunctions solicitados en cuanto a la prohibición del uso de los colores rojo y amarillo y en cuanto al uso del lema "Puerto Rico, hacia el Futuro por Buen Camino".

---

marzo de 2002. En cuanto a esto, el foro primario resolvió que el caso ante sí era una excepción a la doctrina de academicidad por presentar una cuestión susceptible de volver a ocurrir.

Por otro lado, en cuanto a la divulgación del folleto "Informe al Pueblo…", el foro de instancia emitió una orden de injunction permanente prohibiendo al E.L.A. y a sus funcionarios la publicación del folleto con fondos públicos y a destruir y reciclar toda copia existente de dicho folleto en los archivos gubernamentales, <u>determinación que, al no ser revisada por la parte demandada, advino final y firme</u>.

El P.N.P. apeló ante el Tribunal de Apelaciones. Alegó, en síntesis, que el foro de instancia incidió: al determinar que el mensaje televisado tuvo un fin público; al concluir que no se presentó prueba que responsabilizara a la Gobernadora; y al no prohibir al E.L.A. usar la combinación de colores rojo y amarillo en sus anuncios o publicaciones con el lema "Puerto Rico hacia el Futuro por Buen Camino".[10] Evaluada la prueba, y prácticamente por los mismos fundamentos, el foro apelativo intermedio emitió sentencia <u>confirmatoria</u> de la emitida por el tribunal de instancia.

Inconforme, el P.N.P. acudió, vía recurso de *certiorari*, ante este Tribunal imputándole al foro apelativo haber errado:

> al confirmar la determinación del Tribunal de Primera Instancia de no prohibir el lema "Puerto Rico hacia el futuro por buen camino" y

---

[10] La denegatoria del injunction para que se ordenase a la entonces Secretaria de Justicia a recobrar los fondos públicos utilizados en la publicación de los anuncios en controversia <u>no</u> fue impugnada por la parte demandante, <u>por lo que este aspecto también advino final y firme y constituye la ley del caso</u>.

la combinación de colores rojo y amarillo en los anuncios publicados por el Estado Libre Asociado de Puerto Rico,

al confirmar la determinación del Tribunal de Primera Instancia con respecto a que el mensaje televisado de la Gobernadora del día 19 de marzo de 2002, tenía un fin público y no se transmitió en violación de las disposiciones de ley y preceptos constitucionales y,

al confirmar la determinación del Tribunal de Primera Instancia de que la Hon. Sila M. Calderón no responde tanto en su carácter personal y oficial como Gobernadora, por los hechos objeto de la demanda.

Por encontrarse igualmente dividido, el 21 de junio de 2004, este Tribunal expidió el recurso de *certiorari* presentado y dictó Sentencia confirmatoria de la emitida en el caso por el foro apelativo intermedio.[11] En atención a una moción de reconsideración, presentada por el P.N.P., emitimos una Resolución, el 11 de octubre de 2004, en la cual decidimos reconsiderar la referida sentencia.[12]

I

Nos encontramos, nuevamente, ante una controversia de índole política donde se plantea la interrogante de si un partido político en el poder ha violado la Sección 9 del

---

[11] La entonces Juez Presidenta Naveira Merly, el entonces Juez Asociado Hernández Denton y el Juez Asociado Fuster Berlingeri hubieran denegado la expedición del recurso por haberse tornado académico. Por otra parte, el Juez Asociado Rebollo López, el entonces Juez Asociado Corrada del Río, y el Juez Asociado Rivera Pérez hubieran expedido el recurso.

[12] Todos los jueces que intervinieron en la referida reconsideración estuvieron de acuerdo con dicho curso de acción, excepto las Juezas Asociadas Fiol Matta y Rodríguez Rodríguez, quienes se inhibieron.

Artículo VI de la Constitución del ELA, ante, al utilizar fondos públicos para pagar anuncios gubernamentales que, alegadamente, tienen contenido político partidista dirigido a beneficiar al partido o a sus candidatos.

Sabido es que para que un tribunal pueda entrar a dilucidar una controversia, la misma tiene que ser justiciable. Uno de los supuestos en que un pleito no es justiciable es cuando éste se ha tornado académico ya que, bajo este supuesto, un tribunal no tendría jurisdicción para entrar en los méritos del caso. Por ello, en primer lugar, debemos considerar si el asunto ante nos se ha tornado académico.

En su escrito, la recurrida Sila María Calderón trae a nuestra atención el cambio en la situación fáctica que tuvo ante sí el foro primario al momento de emitir su sentencia.[13] Esto es, que el 22 de mayo de 2003, ella informó al País su intención de no buscar la reelección como Gobernadora en las elecciones del 2004, y que, en efecto, no se postuló para este puesto. Señala, además, el hecho de la elección de una nueva administración para el E.L.A. a partir de este mismo año. En virtud de lo anterior, sostiene que el análisis en cuanto a que los anuncios objetados tuvieron el efecto de otorgarle ventaja sobre otro candidato en una futura contienda eleccionaria se tornó académico.

Una controversia es académica cuando ocurren cambios durante el trámite judicial, ya sean fácticos o en el

---

[13] Dicha sentencia fue emitida el 9 de abril de 2003.

derecho aplicable, que hacen que una controversia pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no pueda tener efecto real alguno en cuanto a esa controversia. RBR Const., S.E. v. A.C., 149 D.P.R. 836 (1999).

El propósito de la referida doctrina es evitar el uso inadecuado de recursos judiciales y obviar precedentes innecesarios. P.N.P. en Humacao v. Carrasquillo, res. el 22 de octubre del 2005, 2005 T.S.P.R. 157; Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos, 150 D.P.R. 924 (2000). Al analizar la academicidad de un caso, el tribunal debe evaluar los eventos anteriores, próximos y futuros a fin de determinar si su condición de controversia viva y presente subsiste con el transcurso del tiempo. Ibid.

Se han elaborado, sin embargo, una serie de excepciones a la doctrina de academicidad que permiten la consideración de un caso que de otro modo resultaría académico en cuanto a su resultado o efecto inmediato. Una de estas excepciones es cuando se plantea una cuestión recurrente o susceptible de volver a ocurrir y exista la posibilidad de que ésta evada la revisión judicial. P.P.D. v. Gobernador I, ante; C.E.E. v. Dpto. de Estado, 134 D.P.R. 927 (1993).

La excepción de cuestión recurrente exige que se analicen varios factores: la probabilidad de la recurrencia,

la identidad de las partes[14] y la probabilidad de que la controversia evada la revisión judicial. Asoc. de Periodistas v. González, 127 D.P.R. 704 (1991). En cuanto a la probabilidad de que la controversia evada la revisión judicial hemos expresado que esto sucede cuando, por la naturaleza efímera o de corta duración de los hechos que provocan la cuestión, sea difícil que logre ser dilucidada por los tribunales. Noriega v. Hernández Colón, 135 D.P.R. 406 (1994); C.E.E. v. Depto. de Estado, ante; El Vocero v. Junta de Planificación, 121 D.P.R. 115 (1988).

En Empresas Puertorriqueñas de Desarrollo, Inc. v. Hermandad Independiente de Empleados Telefónicos, ante, expresamos, sobre el asunto de la academicidad, que:

> En el caso de autos, las manifestaciones específicas que dieron lugar al recurso ante nos han cesado ya, por lo que podría estimarse que la controversia concreta que nos concierne aquí sobre el injunction preliminar se ha tornado académica. No obstante, es evidente que la cuestión novel e importante que este pleito presenta, de si agrupaciones como las peticionarias pueden llevar a cabo manifestaciones como las del caso de autos en un centro comercial privado, cuando sus dueños se oponen a tales actos, es una que con razonable probabilidad ha de surgir de nuevo. El acto de expresión pública impugnado puede volver a concluir antes de que la cuestión referida haya sido dilucidada judicialmente en los méritos.

En C.E.E. v. Dpto. de Estado, ante, resolvimos que aun cuando ya habían culminado las actividades realizadas por el

---

[14] En Com. de la Mujer v. Secretario de Justicia, 109 D.P.R. 715 (1980), expresamos que para que opere esta excepción, la recurrencia no tiene que ser específicamente entre las mismas partes.

Departamento de Estado que alegadamente violaron la Ley Electoral de Puerto Rico, Ley Núm. 4 del 20 de diciembre de 1977, 16 L.P.R.A. secs. 3101 *et seq*, y aunque ningún remedio judicial pudiese evitar la divulgación de los anuncios en controversia, la controversia de derecho entre las partes era susceptible de volverse a repetir. Esto es, que "…con marcada frecuencia las agencias y los departamentos gubernamentales se ven en la necesidad de anunciar al país los eventos públicos que habrán de celebrar aun en años electorales y la postura de la Comisión, si no se dilucida de manera determinante, es potencialmente una fuente de continuos conflictos."[15]

Respecto a los anuncios gubernamentales, señalamos en P.P.D. v. Gobernador I, ante, que por la naturaleza de la controversia de estos casos, o sea, el uso de fondos públicos para sufragar anuncios de índole político-partidista, ésta era susceptible de repetirse, aun cuando el anuncio ya no se publicaba. Ibid, pág. 677.

En el presente caso, la controversia particular de la procedencia del injunction para prohibir el uso del rojo y amarillo y el lema antes descrito se tornó académica ya que estamos ante un cambio de administración que, aunque regida por el P.P.D., no se le ha imputado el uso de esos colores ni del lema en cuestión. Por ello, sería improcedente

---

[15] En este caso la controversia era si la Ley Electoral disponía que en un año eleccionario las agencias gubernamentales del E.L.A. estaban obligadas a someter a la Comisión Estatal de Elecciones todos los anuncios que éstas deseaban publicar.

conceder los remedios solicitados por el P.N.P., en cuanto a expedir un injunction permanente contra el E.L.A., para prohibir la publicación de anuncios que contengan los referidos colores y el lema impugnado.

Ello, no obstante, la controversia central en el presente caso no es si la Hon. Sila M. Calderón adquirió una ventaja política en las pasadas elecciones, sino si los anuncios gubernamentales impugnados, y que fueron sufragados con fondos públicos, tuvieron un fin público o un fin político partidista.[16] En atención a ello, el presente caso requiere que determinemos si los anuncios gubernamentales --aun cuando ya no se publiquen-- violaron, o no, el mandato de la Sección 9 del Artículo VI de nuestra Constitución, el cual, repetimos, al consagrar el buen manejo de los fondos públicos, constituye un valor constitucional de la más alta jerarquía.

Contrario a lo expresado por la Mayoría, entendemos que es muy probable --como en efecto puede apreciarse de nuestra pasada jurisprudencia-- que en futuras ocasiones vuelva a surgir una controversia en la que se le impute al gobernador y/o al partido político en el poder hacer uso de fondos públicos para fines político partidista y que ésta evada la revisión judicial por circunstancias similares a las que ocurren en el presente caso, o sea, que ocurra un cambio de

---

[16] Es procedente enfatizar sobre este aspecto que, entre los remedios solicitados ante el Tribunal de Primera Instancia se encuentra el de dictar una sentencia que declarase inconstitucional el uso de fondos públicos para costear los anuncios impugnados.

administración, o que los anuncios ya no se publiquen. En vista de ello, sostenemos que es necesario que pasemos juicio sobre la presente controversia.

En P.P.D. v. Gobernador I, ante, nos enfrentamos a una controversia muy similar a la del presente caso. Este Tribunal no estableció una norma que determinara qué colores, lemas, etc. pueden ser utilizados en anuncios gubernamentales[17], sino que estableció una prohibición del uso de fondos públicos para difundir cualquiera de estas formas de expresar ideas que pretendan realzar la imagen del partido político en el poder, influenciando la opinión pública a su favor, o que pretenda otorgarle a este partido una ventaja indebida sobre partidos opositores, o que inserte lemas, colores, insignias, símbolos, etc. de corte político partidista.

Es menester enfatizar una importante distinción entre ambos casos: en P.P.D. v. Gobernador I, ante, era de aplicación la llamada "veda electoral" del Artículo 8.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3351, y, por lo tanto, el análisis de los anuncios en controversia giró en torno a si estos se estaban publicando como parte de una campaña política del partido en el poder para sacar ventaja sobre el partido opositor en las elecciones próximas. En consideración a ello fue que se concedió el

---

[17] Reconocemos que así hacerlo constituiría una intromisión indebida de la Rama Judicial en las funciones de la Asamblea Legislativa.

injunction preliminar solicitado para prohibir al E.L.A., a sus funcionarios, agencias, etc. la publicación de dichos anuncios.

En el presente caso, como se discutirá más adelante, la referida Ley no es de aplicación ya que los anuncios no fueron publicados en año eleccionario. El análisis de los anuncios en controversia en el caso hoy ante nuestra consideración se hace en torno a la Sección 9 del Artículo 6 de la Constitución del E.L.A., y si los anuncios tuvieron un fin público.

Por ello, y para tratar de evitar en lo posible, la recurrencia de casos de esta naturaleza es necesario que nos expresemos sobre si los anuncios impugnados en el presente caso violaron nuestra Constitución. En otras palabras, somos del criterio que por tratarse de una controversia susceptible de volverse a repetir, la misma cumple con una de las excepciones a la academicidad.

II

Como es sabido, existe un derecho del pueblo a estar bien informado. Este derecho es consustancial con el derecho al sufragio universal, consagrado en la Sección 2 del Artículo II de la Constitución del E.L.A., ante, y del cual surge el deber del Gobierno de informar al pueblo de las gestiones realizadas en cumplimiento del mandato que éste le concedió. Ello, porque la ciudadanía tiene derecho a ejercer su voto de forma informada y consciente, y para esto tiene

que estar al tanto de las gestiones y obras realizadas por los funcionarios que eligió. Por esto, existe una relación estrecha entre el deber del Gobierno de mantener debidamente informado al pueblo y la publicación de anuncios en cumplimiento de este deber.

El Gobierno cumple con su deber de información mediante expresiones dirigidas a educar, comunicar y orientar al pueblo sobre los servicios y programas públicos así como cualquier otra expresión que sirva para mantener al pueblo enterado de las labores que realiza en beneficio de los ciudadanos. En reconocimiento de este deber de información, este Tribunal expresó en P.P.D. v. Gobernador I, ante, que la expresión del Gobierno de naturaleza educativa e informativa es indispensable para que el pueblo pueda juzgar su labor y exigir remedios a los agravios gubernamentales.[18] "Nuestra jurisprudencia refleja la tendencia seguida en favor de la divulgación de información pública, al punto de impartirle una dimensión amplia y robusta a la libertad de expresión consagrada en nuestra Carta de Derechos." Ibid, pág. 680.[19]

---

[18] Es menester enfatizar que en P.P.D. v. Gobernador II, 136 D.P.R. 919 (1994) este Tribunal señaló que el derecho constitucional a la libre expresión le asiste a los individuos frente al Estado. "De ahí que el Gobierno no tiene un derecho constitucional a la libre expresión protegido". Ibid, a la pág. 923.

[19] Citando a Noriega v. Gobernador, 130 D.P.R. 919 (1992); Noriega v. Gobernador, 122 D.P.R. 650 (1988); López Vives v. Policía de P.R., 118 D.P.R. 219 (1987); Soto v. Srio. de Justicia, 112 D.P.R. 477, 485 (1982); Dávila v.

Ahora bien, existen en nuestro ordenamiento limitaciones a este deber de información. Estas limitaciones se manifiestan tanto en la Sección 9 del Artículo VI de la Constitución del E.L.A., ante, que prohíbe el desembolso de fondos públicos para fines que no sean públicos, como en la llamada "veda electoral" establecida en el Artículo 8.001 de la Ley Electoral de Puerto Rico, ante, al prohibir que el partido que esté en el poder utilice, durante un año eleccionario, fondos públicos para promover su plataforma política.[20]

Ambas restricciones protegen, además, el axioma constitucional de igualdad política. Véase, Miranda v. C.E.E. 141 D.P.R. 775 (1996); P.P.D. v. Gobernador II, 136 D.P.R. 919 (1994). Conforme dicho principio, es impermisible que el partido en el poder adquiera una ventaja en el proceso político utilizando fondos públicos para difundir

Superintendente de Elecciones, 82 D.P.R. 264 (1960); Sierra v. Tribunal Superior, 81 D.P.R. 554 (1959).

[20] El citado Artículo dispone que:
Se prohíbe a las agencias del Gobierno de Puerto Rico, la Asamblea Legislativa de Puerto Rico y a la Rama Judicial, que a partir del 1ro. de enero del año en que deba celebrarse una elección general y hasta el día siguiente a la fecha de celebración de la misma, incurran en gastos para la compra de tiempo y espacio en los medios de difusión pública con el propósito de exponer sus programas, proyectos, logros, realizaciones, proyecciones o planes. Se exceptúan de esta disposición aquellos avisos y anuncios de prensa expresamente requeridos por ley. Asimismo, se exceptúan de la anterior disposición aquellos anuncios que sean utilizados para difundir información de interés público, urgencia o emergencia, los cuales sólo serán permitidos previa autorización al efecto de la Comisión Estatal de Elecciones.

sus ideas, posturas o plataforma política mediante cualquier tipo de expresión pública. Esto incluye los anuncios gubernamentales.

Del antes citado Artículo 8.001 de la Ley Electoral, surge de forma inequívoca la <u>intención legislativa</u> de excluir definitivamente del proceso político la influencia solapada que el partido en el poder puede tener mediante el uso de anuncios gubernamentales. <u>P.P.D.</u> v. <u>Gobernador II</u>, ante; <u>C.E.E.</u> v. <u>Depto. de Estado</u>, ante. Sin embargo, la restricción impuesta al Gobierno mediante la referida disposición estatutaria es aplicable, únicamente y por sus propios términos, en años electorales.

El análisis sobre la validez de la publicación de anuncios gubernamentales en años <u>no</u> eleccionarios, o sea, fuera del periodo de la veda electoral, <u>como ocurre en el presente caso</u>, dependerá de que éstos cumplan con los parámetros constitucionales de la Sección 9 del Artículo VI de la Constitución del E.L.A., ante.[21]

Dispone la referida disposición constitucional que:

Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento de las instituciones del Estado, y en todo caso por autoridad de ley.

Entre la Sección 9 del Artículo VI de la Constitución del E.L.A. y el axioma de igualdad electoral en su vertiente

---

[21] Queda claro, entonces, que toda vez que los anuncios impugnados fueron publicados fuera de la veda electoral no corresponde analizar si estos violaron las disposiciones del Artículo 8.001 de la Ley Electoral, ante.

de igualdad económica existe una estrecha relación. De ahí que nuestro esquema electoral garantice la igualdad económica entre los partidos, restringiendo el uso de fondos públicos para fines públicos sin limitarlo al periodo eleccionario. Véase, P.P.D. v. Gobernador I, ante, a la pág. 671.[22]

En cuanto a lo que constituye fin público, en McCormick v. Marrero, 64 D.P.R. 260 (1944), interpretamos dicho concepto como aquello que se considere en beneficio público y cuando el propósito que se pretende realizar es de carácter público. Es cierto, además, que en cuanto a lo que constituye un fin público, los foros judiciales están obligados a darle deferencia a las determinaciones legislativas sobre este concepto. Ibid. No obstante, en P.S.P. v. E.L.A., 107 D.P.R. 590, 599 (1978) expresamos que tal deferencia no nos priva de nuestra facultad de interpretar finalmente la Constitución, facultad que es ineludible e indelegable.

En P.I.P. v. C.E.E., 120 D.P.R. 580 (1988), expresamos además, que los tribunales, aun cuando deben actuar con prudencia y deferencia a la voluntad legislativa al revisar las determinaciones de lo que es fin público, la misma debe estar enmarcada dentro del sistema constitucional. Ibid, a la pág. 611. "Ahora bien, esa deferencia no significa que

---

[22] También expresamos en el referido caso que la Sección 9 del Artículo VI de nuestra Constitución no requiere una ley específica para su aplicación. P.P.D. v. Gobernador I, ante, a la pág. 692.

los tribunales debemos renunciar a ejercer nuestra facultad constitucional de evaluar si determinado uso de propiedad o fondos del Estado por parte de la Legislatura y el Ejecutivo constituye un uso para un fin público. Esa deferencia tampoco puede ser llevada al absurdo de que este Tribunal se cruce de brazos para permitir un uso de fondos públicos para un fin claramente contrario a nuestro ordenamiento constitucional." Báez Galib v. C.E.E., 152 D.P.R. 382, 396 (2000); P.I.P. v. C.E.E., ante a la pág. 612.

El requisito de "finalidad pública" es un presupuesto indispensable en todo proceso de erogación de fondos públicos que limita la capacidad de actuar del Estado. En cuanto al alcance de este concepto, en P.P.D. v. Gobernador I ante, a la pág. 686, este Tribunal expresó que:

> El concepto de "fin público" no es uno estático y sí uno ligado al bienestar general que tiene que ceñirse a las cambiantes condiciones sociales de una comunidad específica, a los problemas peculiares que éstas crean y a las nuevas obligaciones que el ciudadano impone a sus gobernantes en una sociedad compleja. Su significado ha cobrado un marco dimensional de naturaleza liberal, generalmente prevaleciendo el criterio de que los objetivos que estuvieren contemplados en el referido fin público deben redundar en beneficio de la salud, seguridad, moral y bienestar general de todos los ciudadanos. (Énfasis en el original. Cita omitida.)

III

En virtud de todo lo anteriormente expresado, no hay duda de que resulta legítimo y razonable que el Gobierno --fuera de año eleccionario-- utilice fondos públicos para comprar espacios en los medios de difusión pública con el

propósito de exponer sus programas, proyectos, logros, realizaciones o planes toda vez que esta acción gubernamental --en cumplimiento con su deber de información-- constituye un fin público. Es por ello que resulta obvio que no toda campaña publicitaria por parte del Gobierno viola el referido mandato constitucional.

Ahora bien, debe mantenerse presente lo expresado en Marrero v. Municipio de Morovis, 115 D.P.R. 643, 645 (1984), a los efectos de que resulta negativo, al mejor desenvolvimiento de un sano proceso político democrático, que determinado partido político utilice fondos y/o recursos públicos para sus particulares fines privados. Es por ello que si los anuncios gubernamentales sufragados con fondos públicos son utilizados por la administración de gobierno en el poder con fines político partidista no se cumple con la exigencia constitucional. Dicho de otra forma, viola la Sección 9 del Artículo VI de nuestra Constitución y el axioma de igualdad electoral, el partido político que utilice fondos públicos para publicar anuncios que contengan, símbolos, frases, colores, etc., de corte político partidista. También viola estos preceptos el uso de fondos públicos para adelantar cualquier fin que tenga el propósito de darle ventaja al partido político en el poder, aun en años no eleccionarios.

La prohibición de la Sección 9 del Artículo VI de la Constitución del E.L.A. es tajante, no se permite el uso político partidista de los fondos públicos. Tampoco es

permitido al partido político de gobierno o candidato a puesto electivo que obtenga una ventaja económica sobre partidos opositores a expensas del erario.

Por ello, en P.P.D. v. Gobernador I, ante, este Tribunal reconoció que no era necesaria una determinación de fin público cuando el Gobierno utilizaba o incorporaba símbolos, emblemas, colores, fotografías o lemas de obvia naturaleza político-partidista. Tampoco se le reconoce validez constitucional a cualquier expresión gubernamental difundida mediante el uso de fondos públicos cuando ésta claramente constituye un subterfugio para conferir una ventaja a un candidato o a un partido político, o para adelantar sus intereses político-partidistas. Ibid, a la pág. 691.[23]

---

[23] En este caso, además, este Foro determinó que se considerará que la expresión gubernamental contendrá un fin público siempre y cuando la misma cumpla con ciertos criterios. Estos son, que:
1. Redunda en beneficio de la salud, la seguridad, la moral y el bienestar general de todos los ciudadanos.
2. Está destinado a una actividad de carácter público o semipúblico.
3. Promueve los intereses y objetivos de la entidad gubernamental, en consonancia con sus deberes y funciones o la política pública establecida.
4. Promueve programas, servicios, oportunidades y derechos, o adelanta causas sociales, cívicas, culturales, económicas o deportivas.
5. Promueve el establecimiento, modificación o cambio de una política gubernamental.
Una vez se determina que existe un fin público en relación con la erogación de fondos por una entidad gubernamental, el hecho de que surja un beneficio incidental en favor de personas particulares no desvirtúa el fin público a que va

En consecuencia, cuando nos enfrentamos a una comunicación gubernamental dirigida al pueblo, --sea en año electoral o en año no electoral-- que contiene obvia propaganda política, estamos impedidos de reconocerle fin público alguno. La propaganda político partidista en un anuncio gubernamental lesiona el imperativo de igualdad electoral y la Sección 9 del Artículo VI de nuestra Constitución.

IV

A

Con este trasfondo en mente, analizamos primero los anuncios de prensa impugnados y la presencia en éstos de los colores y el lema en cuestión con el fin de determinar si su uso tuvo o no un fin político partidista. Veamos.

Es menester enfatizar que los anuncios publicados en los distintos periódicos --y que fueron detallados en la sentencia del tribunal de instancia-- estuvieron destinados a promover programas, servicios y oportunidades o actividades gubernamentales. No hay duda que esto, en principio, es cónsono con los intereses del Gobierno de proveer publicidad a los servicios y programas que ofrece a beneficio de la comunidad, mantener al pueblo informado y de estimular la participación del pueblo en los programas que se ofrecen. En este sentido, los referidos anuncios, claramente, perseguían un fin público. Ahora bien, resta

_____

dirigida la actividad gubernamental. Ibid, a la pág. 688.

analizar si el uso de los colores y el lema que han sido impugnados tuvo como consecuencia la anulación de este fin público y, por consiguiente, si violaron la Sección 9 del Artículo VI de la Constitución, ante.

Estamos conscientes que en Puerto Rico, el uso de ciertos colores --como el rojo, azul y verde-- es susceptible de un argumento de asociación política. Ello no obstante, el mero uso de estos colores no hace, sin más, que el anuncio gubernamental viole nuestra Constitución. Hemos analizado cada uno de los anuncios que constan en el expediente y hemos observado, al igual que el foro de instancia y el tribunal apelativo intermedio, que los colores utilizados en los anuncios no fueron de uso predominante. Como relatáramos anteriormente, sólo unos cuantos de los referidos anuncios contienen, en la parte inferior, un pequeño recuadro con el fondo color amarillo y palabras escritas en rojo.

En fin, la utilización de los colores rojo y amarillo --por sí solos y utilizados de forma no generalizada-- no nos impide encontrar un fin público en dicha comunicación gubernamental. Lo importante, es que no se trate de un continuo despliegue de estos colores en cada uno de los anuncios de las distintas agencias administrativas.

Sin embargo, no podemos limitarnos a analizar, por separado, la presencia de los colores en los anuncios de prensa en controversia. Hay que considerarlos en conjunto

con el lema "Puerto Rico, Hacia el Futuro por Buen Camino"

que también está presente en los anuncios.[24]

B

La correcta solución de la controversia planteada en el

presente caso exige no sólo un análisis --detenido, objetivo

y juicioso-- de los hechos específicos del caso sino que el

establecimiento de unas premisas básicas, las cuales

resultan determinantes en la consecución de esa solución.

---

[24] En P.P.D. v. Gobernador I, ante, se impugnó el lema de "compromiso cumplido" que aparecía en algunos de los anuncios gubernamentales publicados por las agencias administrativas. Sobre este particular, en ese caso el P.P.D. presentó prueba pericial que demostró que el referido lema estaba siendo utilizado en la campaña política a la gobernación del Hon. Pedro Rosselló para el año siguiente y, simultáneamente, en los anuncios de las distintas agencias gubernamentales.

En este caso se expresó que "[a] pesar de que resulta **evidente** que la utilización de este lema responde a fines político-partidistas, la prueba pericial despejó todo tipo de duda al demostrar fehacientemente que el lema en cuestión corresponde a la campaña que simultáneamente conduce el P.N.P. en consideración a las elecciones generales de 1996." Ibid, a la pág. 700.

Este Tribunal resolvió, en el antes citado caso, que el uso de la frase en los anuncios en controversia respondió a una campaña publicitaria concertada, de manifiesto corte político partidista, sufragada con fondos públicos y por lo tanto violaba la disposición constitucional de la Sección 9 del Artículo VI de nuestra Constitución y el axioma de paridad entre los partidos políticos.

En este caso también fueron impugnados los anuncios sobre las tarjetas de salud. En cuanto a éstas, este Tribunal determinó que los anuncios tenían el fin de contrastar la cantidad de tarjetas repartidas por la presente Administración con el hecho que el candidato opositor no había repartido tarjeta alguna. Por ello, determinó que el anuncio adelantaba un fin político partidista. Además, se impugnó un folleto publicado en el Municipio de Carolina, que llevaba el título "Una Década de Superación" junto a un listado de expresiones que describían despectivamente a la anterior administración perteneciente al P.N.P. Este Tribunal también resolvió en cuanto a éstas que perseguían un fin político partidista por resaltar la administración del alcalde en poder.

La publicación de expresiones gubernamentales mediante el uso de fondos públicos para la consecución de un fin público, en algunas ocasiones, puede tener el efecto incidental de producir cierto grado de ventaja al partido político en el poder o a un candidato de dicho partido, lo cual es, hasta cierto punto, inevitable y legítimo. Pero cuando, por el contrario, dicha expresión es utilizada como un vehículo para adelantar cualquier fin individual de dicho partido o candidato, anulando de tal forma la consecución de un objetivo legítimo, tal expresión no puede prevalecer por constituir una ventaja económica a dicho partido, o candidato, por sobre los partidos políticos o candidatos de oposición. P.P.D. v. Gobernador I, ante.

Por otro lado, reconocemos que no corresponde a este Tribunal diseñar el modo en que se publicarán los anuncios gubernamentales ni establecer una norma que preceptúe qué colores puede utilizar un partido político en el poder al divulgar anuncios gubernamentales ni qué frases específicas puede utilizar al realizar su labor de informar al pueblo. Pero es labor ineludible de este Tribunal determinar si un partido político viola, o no, la Sección 9 del Artículo VI de nuestra Constitución al enfrascarse en una campaña publicitaria de esa naturaleza.[25]

---

[25] A esos fines, debe mantenerse presente lo expresado en el antes citado caso de P.P.D. v. Gobernador I, a los efectos de que "[n]inguna de las ramas del Gobierno puede, bajo el subterfugio de la inaplicabilidad de la veda electoral, utilizar fondos públicos para fines político-partidistas, ya

Dicho de otra manera, "[no] nos corresponde pasar juicio sobre la sabiduría de los gastos incurridos en publicidad, siempre que éstos respondan a fines públicos. Sin embargo, es nuestra responsabilidad, como máximos intérpretes de la Constitución, velar por que estos fondos respondan directamente a las necesidades de la ciudadanía y no a los fines de partido o candidato político alguno". Véase: P.P.D. v. Gobernador I, ante a la pág.703. (Énfasis nuestro).

C

Si bien la mayoría de los anuncios publicados, e impugnados, en el presente caso tenían el propósito aparente de informar, y educar, al pueblo sobre programas de gobierno, oportunidades de empleo, horarios extendidos de las diferentes agencias de gobierno, charlas sobre temas particulares, subastas, y, hasta destaque de logros alcanzados --por lo cual, se puede decir, que perseguían un fin legítimo-- la inserción, constante y continua, del lema impugnado --esto es, "Puerto Rico hacia el futuro por Buen Camino"-- en conjunto con los colores rojo y amarillo[26], nos lleva a la conclusión de que tenían, obviamente, un fin

---

que ello no constituye un fin público en nuestra jurisdicción." Ibid, a la pág. 703.

[26] No podemos ignorar que el color rojo siempre ha distinguido la campaña política del Partido Popular Democrático y el color amarillo había sido utilizado, en campañas políticas previas, por la Hon. Sila María Calderón.

político partidista, el cual anula el aparente fin legítimo de informar y educar al pueblo.

Ello así por dos razones, a saber: en primer lugar, la conclusión de que un lema responde a fines político partidista no depende, necesariamente, de que dicho lema haya sido utilizado anteriormente como parte de una campaña política por el funcionario en el poder que lo utiliza.

En segundo lugar, porque el lema no se utilizó como parte de una campaña de determinada agencia para adelantar su política pública o lograr un fin específico, de forma que el lema respondiera al interés particular de esa agencia de motivar al ciudadano, crear consciencia sobre problemas sociales, alertar a la ciudadanía sobre algún asunto, fomentar su cooperación con los programas o proyectos implantados por la misma, entre otros.[27]

Aunque en el presente caso el lema impugnado no había sido utilizado en la campaña eleccionaria en la cual resultó electa la Hon. Sila María Calderón, el uso, continuo y constante, en todos los anuncios de la mayoría de las agencias del Gobierno de Puerto Rico --irrespectivamente de la clase de anuncio que fuera y su propósito-- convirtieron dicho lema en uno político partidista. Resulta claro, en consecuencia, que los anuncios impugnados tuvieron el propósito primordial de realzar, favorecer y diferenciar la

---

[27] Ejemplo de ello sería que los anuncios del Departamento de la Familia, informando algún programa en respuesta a su lucha contra el maltrato infantil, incluyera en los respectivos anuncios el lema "Puerto Rico necesita niños felices".

administración de gobierno de la Gobernadora Calderón, como una "en buen camino", de la anterior administración, que había sido una, alegadamente, de "mal camino".

No debemos olvidar, <u>nunca</u>, que la Constitución del Estado Libre Asociado de Puerto Rico prohíbe <u>todo</u> tipo de desembolsos para fines no públicos. <u>Ninguna administración, sea cual fuere, puede utilizar fondos públicos en pago de anuncios que constituyen un subterfugio para esconder fines político partidista.</u>

En consecuencia, resolveríamos que, tanto el tribunal de instancia como el foro apelativo, <u>erraron</u> al resolver que los anuncios impugnados no eran violatorios de la Sección 9 del Artículo VI de nuestra Constitución.


V

El segundo señalamiento de error se circunscribe a determinar si erró el foro apelativo al resolver que el mensaje televisado de la Gobernadora del día 19 de marzo de 2002, tenía un fin público y no violó las leyes o los preceptos constitucionales.[28] Al hacer este análisis, nos remitimos a la discusión anterior y a los principios expuestos para analizar la legalidad de la expresión gubernamental.

El referido foro expresó en su sentencia que la utilización de fondos públicos para costear el anuncio era

---

[28] El texto íntegro del referido anuncio consta transcrito en la sentencia del Tribunal de Primera Instancia.

válida debido a que la prueba presentada por el P.N.P. no demostró que la Gobernadora hubiera utilizado en su mensaje televisado lemas o símbolos asociados al P.P.D.[29]

Concluyó dicho foro, además, que el mensaje de la Gobernadora promovía un fin público ya que el fin ulterior de las manifestaciones en el anuncio fue mantener la confianza del pueblo y la credibilidad en su gobernante en lo referente a sus actuaciones como administrador y custodio del erario. Lo anterior, porque la Gobernadora se defendía de una serie de ataques hechos por miembros del P.N.P. en los cuales se le imputaba haber utilizado fondos públicos, mientras fungía como Alcaldesa del Municipio de San Juan, para su campaña a la gobernación en las elecciones del año 2000.

Sobre el particular, los peticionarios sostienen que la Hon. Sila M. Calderón no podía utilizar fondos públicos para defender su imagen y que por ello, el mensaje televisado no tuvo fin público alguno.

Hemos evaluado el texto íntegro del anuncio televisado. La esencia del anuncio son explicaciones que la Hon. Sila M. Calderón, brindó al pueblo de Puerto Rico sobre las imputaciones hechas en su contra.[30] El valor informativo fue

---

[29] En su escrito, los peticionarios reconocen, en cuanto al mensaje televisado de la Gobernadora, que no se trata de uno que incorpore lemas políticos o material fácilmente identificable con un partido político.

[30] A continuación, algunas de la expresiones hechas por la Gobernadora en el anuncio televisado del 19 de marzo de 2002:

mayor que cualquier beneficio incidental que la Gobernadora pudo derivar y, por consiguiente, tenía un fin público.

Ya anteriormente expresamos que el derecho al pueblo a estar bien informado se logra permitiendo que la administración de gobierno informe al pueblo sobre las medidas que ha tomado o se propone tomar para lidiar con los

"Esta noche quiero hablarte de un tema muy importante para ti, para mí y para todo Puerto Rico. Se trata de la integridad pública, de la honestidad en el manejo de los asuntos de Gobierno."

"En los últimos días se han hecho y se han publicado expresiones, alegaciones, y acusaciones contra mi campaña a la gobernación. Esto quizás ha creado desorientación en ti y en el pueblo puertorriqueño. De hecho, pienso que el propósito ha sido generar confusión y dudas sobre mi credibilidad, para en alguna forma descarrilar los esfuerzos que llevo para eliminar la corrupción de Puerto Rico."

"Todo esto es muy serio. Por eso, esta noche me estoy dirigiendo a ti. Para darte una explicación de lo más clara posible, sobre estos temas; para asumir la responsabilidad que me corresponde; y para hablarte de frente. Para hablarte con la verdad, como yo la entiendo, y como siempre he dicho que te voy a hablar."

"Los señalamientos que se han hecho son de dos naturalezas. El primero tiene que ver con anuncios que auspiciaron otros candidatos para apoyar el mensaje integrado de cambio. El segundo tiene que ver con conjeturas y especulaciones, de fuentes anónimas y políticas, que han inferido que se usaron fondos municipales en mi campaña."

"Yo te puedo asegurar que ambos señalamientos son total y absolutamente falsos."

"Me siento segura de lo que te estoy diciendo, aun así le he pedido al Departamento de Justicia, al Contralor de Puerto Rico y al Blue Ribbon Committee, que constaten que no hubo uso alguno de fondos públicos en mi campaña".

"Sin embargo, para que sobre este tema tampoco quede duda alguna, le he solicitado una auditoría completa a la Comisión Estatal de Elecciones. Le he hecho una asignación especial de fondos para ese propósito y les he pedido que se atienda este asunto con la mayor rapidez".

asuntos que interesan y aquejan a la ciudadanía, en este caso, la corrupción gubernamental.

En el caso del anuncio televisado, la Gobernadora anunció que se solicitarían investigaciones al Departamento de Justicia, al Contralor de Puerto Rico, al *Blue Ribbon Committee* y a la Comisión Estatal de Elecciones para que éstos constataran que no hubo uso de fondos públicos en su campaña para la gobernación; <u>además, fue perfectamente legítimo que la Gobernadora, como primera ejecutiva del Estado, administradora y custodia del erario, utilizara fondos públicos con el fin de transmitir una reacción oficial a las imputaciones que pudieron haber socavado la confianza que el pueblo depositó en ella</u>. Somos del criterio que la Hon. Sila M. Calderón <u>no</u> actuó con el fin de adelantar propósitos políticos o ideología partidista de tipo alguno.

Por consiguiente, <u>resolveríamos</u> que el anuncio televisado <u>no</u> violó las disposiciones de la Sección 9 del Artículo VI de la Constitución del ELA, *ante*.

VI

El tercer señalamiento de error requiere que analicemos si fue correcta la determinación del foro apelativo intermedio de confirmar la desestimación de la demanda contra la Gobernadora tanto en su carácter personal como oficial. <u>El asunto no requiere una extensa discusión</u>. Tanto el foro primario como el foro apelativo determinaron que el

remedio solicitado por el P.N.P. en el presente caso <u>no creaba una causa de acción contra la Gobernadora</u>, en ningún carácter, y que, por el contrario, la causa de acción era contra el E.L.A. Ni de la demanda ni de la evidencia estipulada, por los peticionarios surge una causa de acción en contra de la Hon. Sila M. Calderón. Por consiguiente, concluiríamos que <u>no</u> erraron <u>ni</u> el foro primario <u>ni</u> el foro apelativo al hacer esta determinación.

Además, el remedio que los peticionarios solicitan contra la Hon. Sila M. Calderón es que se le condene a ésta a restituir los fondos erogados. El P.N.P. <u>no</u> tiene legitimación activa para reclamar la restitución de los fondos al erario. Véase: <u>P.P.D.</u> v. <u>Gobernador I</u>, ante.[31]

VII

Por los fundamentos antes expuestos, revocaríamos parcialmente la sentencia dictada por el foro apelativo intermedio, decretándose la inconstitucionalidad de los anuncios de prensa publicados por la pasada Administración de la Hon. Sila M. Calderón que incluyeron el lema "Puerto Rico, Hacia el Futuro, por Buen Camino", en conjunto con los colores rojo y amarillo, por ser el uso de estos de corte

---

[31] En <u>P.P.D.</u> v. <u>Gobernador I</u>, ante, también se desestimó la causa de acción del remedio de restitución al erario y, como consecuencia, se desestimó la demanda contra el Hon. Pedro Rosselló, porque el P.P.D. no tenía legitimación activa para hacer este reclamo. En dicho caso se le reconoció legitimación activa a los partidos políticos para instar una acción, únicamente, en protección de igualdad electoral en su vertiente de igualad económica.

político partidista y, en consecuencia, violatoria de la Sección 9 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico. Confirmaríamos la referida sentencia en cuanto a los demás asuntos; esto es, en cuanto a la validez del anuncio televisado y en cuanto a la desestimación de la demanda instada contra la Hon. Sila M. Calderón tanto en su carácter oficial como personal.


                                FRANCISCO REBOLLO LÓPEZ
                                     Juez Asociado